J-S20022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: P.N.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.J., FATHER | : | No. 192 MDA 2021 |

Appeal from the Decree Entered January 12, 2021
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 87236

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                         **FILED JULY 29, 2021**

Appellant, M.J. ("Father"), appeals from the decree entered in the Berks County Court of Common Pleas, which granted the petition of the Berks County Children and Youth Services ("BCCYS") seeking involuntary termination of Father's parental rights to his minor child, P.N.J. ("Child"). We affirm.

The trial court set forth the relevant facts of this case as follows:

> Mother had been known by BCCYS since January 2016. BCCYS responded to nine separate reports regarding concerns with Mother's mental health, inappropriate parenting skills, truancy, and drug and alcohol abuse in relation to other children (not part of this matter). BCCYS learned that, on October 26, 2009, the Lehigh County Court of Common Pleas had involuntarily terminated Mother's parental rights to three other children. Additionally, Mother had her parental rights involuntarily terminated to a fourth child on January 11, 2016, and voluntarily terminated to a fifth child on May 21, 2018. Father had no relation to those five children. However, Mother and Father did previously have a child together. Their parental rights to that child were involuntarily terminated on May 30, 2019. That was — as the trial court understands — Father's initial interaction

with BCCYS.

In December 2018, BCCYS learned that Mother was pregnant again (with the Child at issue in this case). Mother told BCCYS she was unsure who fathered the unborn child. Between December 2018 and March 2019, Mother had failed to attend ultrasounds, echocardiograms, and high-risk prenatal appointments (Mother was reported as a high-risk pregnancy due to her being diabetic). On May 20, 2019, Mother reported to BCCYS that she had suffered a miscarriage.

Christine Kopanski ("Ms. Kopanski"), a caseworker with BCCYS, contacted Tower Health Systems Reading Hospital to verify Mother's claims. Hospital staff indicated that Mother was too far into the pregnancy to have miscarried without delivering the baby (the due date was July 31, 2019).

On July 9, 2019, Mother was scheduled for induced labor at Reading Hospital. She failed to appear for the procedure. BCCYS learned that Mother and Father packed up their belongings and left their residence in the middle of the night on or around the same date. At this point, BCCYS had no knowledge of Mother's location. On August 3, 2019, Father was incarcerated because he refused to provide information as to Mother and/or the Child's whereabouts.

On August 7, 2019, the Administration for Children's Services ("ACS") in New York City contacted BCCYS with information that Mother and the Child were at the 13th Precinct of the New York Police Department in Manhattan. Mother had given birth to the Child at Temple University Hospital in Philadelphia [in July], 2019; she subsequently absconded to New York with the Child.

On August 4, 2019, following a conference call between representatives of BCCYS, the supervising attorney for the Manhattan Division of Family Court and Legal Services, and the Hon. Mary Ann Ullman of the Berks County Court of Common Pleas, Judge Ullman entered an emergency dependency order. As a result, ACS took the Child into protective custody before transporting the Child back to Berks County for placement in traditional foster care.

The adjudication and dispositional hearing regarding the Child (the "Dependency Hearing") was originally scheduled to take place on August 14, 2019. Father, however, requested a continuance to seek private counsel. The trial court granted Father's request and rescheduled the Dependency Hearing for September 4, 2019. This began a series of continuance requests, all by Father, related to obtaining representation, including him dismissing court-appointed counsel during a hearing. In total, the Dependency Hearing was rescheduled four times at Father's request before finally taking place on December 4, 2019 (at which time Father again requested a continuance, which was denied). Following the Dependency Hearing, the trial court found the Child dependent and ordered custody transferred to BCCYS with a goal of adoption and a concurrent goal of return to the most appropriate parent. The trial court also entered an aggravated circumstances order, finding such circumstances exist as to Mother and Father due to their parental rights having been involuntarily terminated with respect to another child.

The trial court ordered Mother and Father to comply with certain services, treatment, and substance testing. The trial court expanded the initial list of obligations through subsequent orders entered in connection with the dependency proceedings as a result of Father's continued failure to make suitable progress. Among other things, the trial court ordered Father to:

(a)     Cooperate with parenting education;

(b)     Undergo a mental health evaluation and comply with any treatment recommendations;

(c)     Undergo a domestic violence evaluation and comply with any treatment recommendations;

(d)     Undergo a drug and alcohol evaluation and comply with any treatment recommendations;

(e)     Undergo random urinalysis;

(f)     Participate in casework sessions through BCCYS

and comply with any recommendations;

(g)     Establish and maintain suitable and appropriate housing and income;

(h)     Notify BCCYS of changes in income or residence;

(i)     Sign releases of information as requested; and

(j)     Participate in supervised visitations with the Child.

[Nevertheless], Father did little to comply with services or make sufficient progress to permit reunification with the Child. As such, the Child remained in the custody of BCCYS for approximately nine months before BCCYS filed its Petitions to terminate Mother and Father's parental rights.

(Trial Court Opinion, filed March 25, 2021, at 4-7) (internal footnote and some

capitalization omitted).

Procedurally:

On May 15, 2020, BCCYS filed petitions for involuntarily termination of parental rights relative to Mother and Father (collectively, the "Petitions").[1]  On August 24, 2020, the trial court presided over a hearing relative to the termination of Mother's rights. The trial court entered an order terminating her rights to Child that day. Father appeared, but he was unrepresented and asked for counsel to be appointed on his behalf. The trial court granted Father's request and appointed Emily Cherniack, Esq. of Berks

---

[1] In its termination petition, BCCYS alleged: (a) Father has failed to obtain and maintain a legal/stable source of income; (b) Father has failed to obtain and maintain stable and appropriate housing; (c) the inability of Father to appropriately parent Child; (d) concerns remain regarding Father's mental health; (e) concerns remain regarding issues of domestic violence; (f) Father has failed to remediate his substance abuse issues; (g) concerns remain regarding Father's criminal history; and (h) Father's parental rights were previously terminated with respect to one of his other children in May 2019.

Family Law Attorneys ("Father's Counsel") to represent him in the termination proceedings.

The trial court rescheduled Father's termination hearing for October 5, 2020. Despite having more than a month, both Father and Father's Counsel appeared unprepared for the hearing. Mindful of the need for permanency, the [c]ourt nevertheless granted a continuance due to Father's behavior. Father was erratic and antagonistic toward the trial court and his court-appointed counsel. This coupled with the trial court's previous interactions with Father, raised serious concerns as to Father's mental health and his ability to competently participate. When asked if he would like a Guardian *Ad Litem* appointed to assist him in interacting in court as well as with his court-appointed counsel, Father admitted to mental health issues and welcomed a Guardian *Ad Litem*. On October 7, 2020, the trial court appointed attorney John Grenko, Esq. as Father's Guardian *Ad Litem* ("Father's Guardian"). After several additional continuances, Father's termination hearing occurred on January 11, 2021 (the "Termination Hearing").

The trial court presided over the Termination Hearing. Father attended the Termination Hearing with the assistance of his counsel and his Guardian *Ad Litem*. On January 12, 2021, after careful consideration, the trial court entered an order terminating Father's parental rights to the Child, finding that BCCYS had established its burden under Section 2511 of the Act by clear and convincing evidence.

(*Id.* at 1-2) (some capitalization omitted). On February 8, 2021, Father filed a timely notice of appeal along with a Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.

Father raises three issues for our review:

Whether the trial court erred in granting the petition to terminate Father's parental rights where [BCCYS] filed a petition to terminate Father's parental rights only a few months after the child was adjudicated dependent and in the middle of a historic Covid pandemic leaving father with an unreasonably short period of time to complete his family

service plan objectives and counter Section 2511(a)?

Whether the trial court erred by not identifying which subsections it terminated Father's parental rights pursuant to 23 Pa.C.S.A. Section 2511(a)?

Whether the trial court erred by not granting…Father's request for a continuance and to have new counsel appointed or retained on his behalf?

(Father's Brief at 4).

In his first issue, Father argues that he was not given enough time to complete his court-ordered objectives. Father asserts that the COVID-19 pandemic eliminated or severely limited his access to various services. In support of his argument, Father relies on a letter from the federal Department of Health and Human Services instructing state children and youth services agencies to give consideration to the impacts of the COVID-19 pandemic on parents' access to services necessary to work towards reunification. The letter urges agencies "to continue to consider the totality of each family's circumstances prior to filing a [termination of parental rights] petition." (Father's Brief at Exhibit 2). Father insists he should have had more time to complete his goals in light of the pandemic. Father concludes the trial court terminated his parental rights prematurely, and this Court should vacate and remand for further proceedings. We disagree.

Appellate review in termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the

- 6 -

order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

BCCYS sought involuntary termination of Father's parental rights to

Child on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b)    Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (b).   "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P., supra*** at 1117.  When conducting a termination analysis:

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of…his parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.  In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing

> parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

Instantly, Ms. Kopanski, a BCCYS caseworker, testified at the termination hearing that Father failed to complete his mental health, domestic violence, and drug and alcohol evaluations, and did not complete random urinalysis, despite an agreement with BCCYS that the agency would pay for the mental health and domestic violence evaluations. (*See* N.T. Termination Hearing, 1/11/21, at 38, 79-80). Further, Ms. Kopanski testified that Father was not compliant with his casework services, and he did not sign releases for his treatment providers. (*Id.* at 39, 81). In fact, Ms. Kopanski indicated that the only court-ordered services Father participated in were the supervised visits with Child and the parenting education, which occurred during the visits. (*Id.* at 39, 78-79).

Ms. Kopanski conceded that drug and alcohol evaluation services were unavailable from March, 2020 until July 1, 2020. (*Id.* at 47). Nevertheless, mental health and domestic violence evaluation services continued to be available through telehealth appointments during the pandemic. (*Id.* at 48). Although the pandemic interfered with in-person visitation, visits continued virtually. (*Id.* at 53).

The trial court based its termination decision on Father's "failure to comply with court-ordered services, treatment, and testing." (Trial Court Opinion at 9). Specifically, the trial court cited Father's failure to complete mental health, domestic violence, and drug and alcohol evaluations, his failure

to attend any drug screenings, and his failure to sign releases of information as ordered by the court, which would confirm or deny his completion of the evaluations. (*Id.* at 9, 11). Regarding casework, the trial court explained that Father did not reply to BCCYS' eight attempts to schedule a meeting between January 10, 2020 and July 14, 2020, and hung up on Ms. Kopanski on April 22, 2020. (*Id.* at 9). The court found Father's testimony that he had engaged in the ordered services to be incredible and noted the lack of evidence confirming his testimony.[2] (Trial Court Opinion at 11).

Further, the trial court explained that while Father participated in visitation and parenting education, issues occurred during Father's performance of these services. Visits were offered weekly to Father beginning August 20, 2019. (*Id.* at 10). Father's attendance was good until November 6, 2019. (*Id.*) Thereafter and until December 4, 2019, Father either failed to confirm visits or canceled them. (*Id.*) Father's visits were subsequently reduced to monthly due to Father's failure to engage in services or consistently attend visitations. (*Id.* at 10). Parenting education occurred during the visits, but Father was not receptive to the advice and harassed the parent trainer. (*Id.*). Due to the pandemic, visitations were offered remotely from March 17,

_____

[2] We are bound by the trial court's credibility determinations. *See In re Adoption of A.C.H., supra* at 228 (stating: "Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact").

2020 through July 1, 2020. (*Id.*).

As to the remaining court-ordered goals, the court acknowledged that Father received income from Social Security and maintained relatively stable housing, having two addresses between August 2019 and January 2021. (*Id.* at 10-11).

With respect to Father's complaint that the pandemic interfered with his ability to complete his objectives in a timely manner, the trial court stated:

> For this to ring true at all, Father would have had to have actually engaged in or participated in any of the trial court-ordered services. Pandemic or not, Father never even attempted to undertake these services. COVID-19 restrictions began going into effect in mid-March 2020. Father was ordered to begin services months prior to the restrictions. Father simply never took an honest step toward complying with what was ordered by the trial court.

(*Id.* at 12) (some capitalization omitted).

Our review of the record supports the trial court's analysis. We note that the pandemic only limited Father's access to the drug and alcohol evaluation services, which were unavailable from March, 2020 until July 1, 2020. Father had four months to complete this evaluation prior to this interruption, and had he made earnest efforts to complete other evaluation services prior to the pandemic, his claim may have had merit. All other services were uninterrupted or were available virtually. The record simply belies Father's claim that the pandemic was responsible for his failure to complete his goals in a timely fashion. *See In re Z.P., supra* at 1118 (explaining that parent's vow to cooperate, after long period of

uncooperativeness regarding necessity or availability of services, may properly be rejected as untimely or disingenuous). Thus, Father's first issue merits no relief.

In his second issue, Father argues that the court failed to specify under which subsections of Section 2511(a) the court found termination proper in its termination decree. Father complains that the court's mention of subsections (a)(1), (2), (5), and (8) for the first time in its Rule 1925(a) opinion was insufficient.[3] Father also claims termination was improper under the relevant subsections of Section 2511(a). Although BCCYS filed the termination petition approximately nine months after Child's removal, Father maintains that his court ordered goals were not established until several months after Child's removal. Thus, Father maintains he had only six months to complete those goals before BCCYS filed the termination petition. Father reiterates that the pandemic limited his access to court ordered services and his ability to complete the goals. Father concludes termination of his parental rights was premature, and this Court should remand to allow him more time to complete the court ordered goals. We disagree.

Preliminarily, we have already rejected Father's argument that the pandemic was to blame for Father's failure to complete his goals. Further, the

---

[3] While the trial court's opinion and Father's brief address subsections (a)(1), (2), (5), and (8), BCCYS' termination petition did not cite subsection (a)(8) as a ground for termination. Therefore, we will not consider that subsection in our review.

record belies Father's claim that the court did not state under which subsections of Section 2511(a) it found termination proper. To the contrary, BCCYS' petition seeking involuntary termination of Father's rights cited 23 Pa.C.S.A. § 2511(a)(1), (2), and (5). In its termination decree, the court stated: "AND NOW, this 12th day of January, 2021, after hearing, this Court finds that the facts alleged in the Petition for Involuntary Termination of Parental Rights have been established by clear and convincing evidence[.]" (Final Decree, filed January 12, 2021). In its Rule 1925(a) opinion, the court explained, "[t]hese subsections were specifically identified in BCCYS's petition seeking termination of his rights, specifically 23 Pa.C.S.[A]. Sections 2511(a)(1), (2), and (5). Father and his counsel were well aware, in advance of the Termination Hearing, of the subsections the agency was seeking to terminate his rights under." (Trial Court Opinion at 12). We agree with the court's statements. While the court did not repeat the relevant subsections in its termination decree, Father could have inferred from the decree that the court found termination proper under all subsections pled in BCCYS' petition.

Moreover, the record supports the court's termination of Father's parental rights. BCCYS established at the termination hearing that from December 4, 2019 through May 15, 2020, Father failed to complete numerous court-ordered services. Father's failure to complete court-ordered services warrants termination of his parental rights under Section 2511(a)(1). *See* 23 Pa.C.S.A. § 2511(a)(1); ***Z.S.W., supra***. ***See also In re K.Z.S.***, 946 A.2d

753, 761 (Pa.Super. 2008) (holding termination of mother's parental rights was proper under Section 2511(a)(1) where mother, *inter alia*, failed to complete her family service plan and individual service plan goals; "[b]ecause of [m]other's lack of compliance prior to the filing of the Petition for Involuntary Termination, the court found that [m]other has not demonstrated a serious intent to cultivate and maintain a parent/child relationship with [child]"). As the court's termination decision under Section 2511(a)(1) was proper, we need not address the remaining Section 2511(a) subsections.[4] **See In re Z.P., supra** at 1117.

On this record, Father knew which subsections BCCYS was seeking termination under at the hearing, the court referenced the facts alleged in BCCYS' petition in the court's termination decree, and the court's termination decision was based on competent evidence. **See In re Z.P., supra**.

---

[4] Although Father does not challenge the court's termination decision under Section 2511(b), we observe that Ms. Kopanski testified as to the bond between the foster mother and Child, describing their interaction as "wonderful" and stating "[t]hey are very close, very attached, very bonded." (N.T., 1/11/21, at 40). She further testified, "The child does not know [F]ather. There is no bond there. Father – or child looks to foster mother to meet all of her needs. She's the only parent she's had all her life." (**Id.** at 41). She later testified that Child has been with her foster parents since August 7, 2019 and has bonded with her foster mother, stating "She looks to her to meet all of her needs. She smiles to her, oh, gosh, she responds to her, everything. I mean, that's her parent." (**Id.** at 55). While Father attempted to bond with Child at visits, Ms. Kopanski believed termination of Father's parental rights would be in the best interest of Child. (**Id.** at 44-45). Thus, the trial court decided termination would not detrimentally affect Child, and that it would be in Child's best interest to remain with the foster parents. (**See** Trial Court Opinion at 14-15).

Therefore, Father's second issue on appeal merits no relief.

In his third issue, Father argues the court erred by denying his request for a continuance. Father asserts that he requested a continuance during the termination hearing to subpoena several witnesses and sought to relieve his counsel to secure substitution counsel. Father insists the court's failure to grant his continuance request constituted a violation of his due process rights. Father concludes this Court should grant him a new termination hearing. We disagree.

This Court has explained:

> The matter of granting or denying a continuance is within the discretion of the trial court. Appellate courts will not disturb a trial court's determination absent an abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will.

> *    *    *

> Once a court is satisfied that a parent has received notice of the hearing, it is then entirely within the trial court's discretion to make a ruling on the continuance request based on the evidence before it. As in all matters involving parental rights, the best interests of the child are paramount. Accordingly, the exercise of the trial court's discretion includes balancing the evidence submitted in support of the request against other relevant factors, such as a parent's response and participation, or lack thereof, in prior proceedings and appointments important to the welfare of the child. Most importantly, the trial court is in the best position to factor in the impact that further delay will have on the child's well-being.

*In Int. of D.F.*, 165 A.3d 960, 964-65 (Pa.Super. 2017) (internal citations

- 17 -

and quotation marks omitted).

Regarding the appointment of counsel for parents in termination hearings: "The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, upon petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship." 23 Pa.C.S.A. § 2313(a.1).

> The unique nature of parental termination cases has long been recognized by the Supreme Court of Pennsylvania. Thus, [our] Supreme Court [has] held that an indigent parent in a termination of parental rights case has a constitutional right to counsel. The right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature. However, this right is more limited than that in criminal cases, as claims of ineffective assistance of counsel must be raised on direct appeal. We then review the record as a whole to determine whether or not the parties received a "fundamentally fair" hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was "the cause of the decree of termination."

*In re J.T.*, 983 A.2d 771, 774-75 (Pa.Super. 2009) (internal citations omitted).

Instantly, during the termination hearing, Father requested a continuance to subpoena witnesses to testify on his behalf. (N.T., 1/11/21, at 10). The court acknowledged that it had already granted Father **three** continuances; thus, the court denied Father's request. (***Id.***). After interrupting the proceeding several times, Father attempted to relieve his

counsel during a recess. (*Id.* at 17). The court denied Father's request, and sustained the appointment of Father's guardian *ad litem* and his counsel. (*Id.*). Father then attempted to refuse to testify on grounds that he did not have representation. (*Id.* at 19).

In its opinion, the trial court reasoned:

> In the immediate case, Father was represented by court-appointed counsel throughout all dependency and termination proceedings. Despite purporting to "fire" multiple prior…attorneys in the dependency proceedings, and his insistence at times to represent himself, the trial court appointed new counsel to represent Father at the Termination Hearing. Further, the trial court appointed a guardian *ad litem* to assist Father in his interactions with Father's Counsel and the trial court.
>
> Father had engaged in a course of requesting a series of continuances in both dependency and termination proceedings with the central theme of wanting to retain private counsel. The trial court indulged Father's continuance requests on many more occasions than warranted, but Father never followed through by retaining private counsel of his choice. It is within the trial court's discretion to grant continuances, which it chose to do in abundance of caution to provide Father with the opportunity to find counsel as he purported. Father's requests and reasoning for them, however, were determined by the trial court to not be credible. Rather, Father was engaging in trying to stall proceedings for an indefinite period of time throughout the history of this case. As the Child's need for resolution and permanency is central to these proceedings, the trial court could not continually put the process on hold to entertain Father's desire to stall.
>
> Put simply, Father was afforded court-appointed counsel who ably represented him at the Termination Hearing. For this reason, this issue on appeal lacks merit.

(Trial Court Opinion at 8) (internal footnote and some capitalization omitted).

Under these circumstances, we cannot say the trial court abused its discretion by denying Father's request for a continuance. ***See In Int. of D.F., supra***. The record further confirms that Father was afforded his right to counsel. ***See In re J.T., supra***. We defer to the trial court's credibility determination that Father's requests for continuances to secure substitute counsel were not genuine but made to stall the proceedings. ***See In re Adoption of A.C.H., supra***. Based on the foregoing, Father's third issue lacks merit and warrants no relief. Accordingly, we affirm the court's termination decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/29/2021